UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | | 07-00141-01S |
| | : | |
| DAVID CARPENTER | : | |

**DEFENDANT'S MOTION FOR A VARIANCE FROM THE SENTENCING GUIDELINES PURSUANT TO 18 USC § 3553[1]**

Now comes the Defendant pursuant to Local Rule Cr. 32 and moves that the Court consider imposing a sentence which is at variance with the US Sentencing Guidelines.

Respectfully submitted,

DAVID CARPENTER

By His Attorney,

/s/ Jeffrey B. Pine #2278
321 South Main St.
Providence, Rhode Island 02903
401-351-8200

**CERTIFICATION**

I hereby certify that this Motion and Memo were filed electronically on the 28th day of July 2008, and a copy was mailed to Lee Vilker, Esq., AUSA, 50 Kennedy Plaza, Providence, Rhode Island 02903.

/s/ Jeffrey B. Pine

[1] The Defendant is filing this Motion and Memorandum on July 28, 2008, having received the Final Presentence Report on July 24, 2008 and the Government's Motion pursuant to U.S.S.G. § 5K1.1 on July 23, 2008.

In the present case, Defendant urges the Court to sentence defendant to a period of Probation with the imposition of Home Confinement, rather than a period of incarceration in a federal prison as the guidelines call for.

It is the position of the Defendant that under the criteria set forth in 18 USC 3553 (a) (2) the ends of justice will be best met with a non-jail sentence and this is a sentence that is sufficient, but not greater than necessary, and will accomplish the fundamental objectives of sentencing.

**1. DEFENDANT HAS ACKNOWLEDGED THE SERIOUSNESS OF HIS ACTIONS AND HAS COOPERATED WITH AUTHORITIES FROM THE OUTSET**

Defendant acknowledges the serious offense that has been committed and the fact that he has broken federal law. In fact the Defendant has acknowledged that fact from the beginning, when he met with officials from Bank RI, his former employer, <u>within days</u> of the problems coming to light. At that time the Defendant sat down with Bank RI officials to assist them in trying to right the wrong that he was partially responsible for. The Defendant met with officials and cooperated in their investigation, before this ever became a criminal investigation by the federal authorities. It can accurately be said that the Defendant volunteered his cooperation before there was any legal incentive for him to do so; he did it because of his regret over his actions and his desire to make it right with his employer, Bank RI.

Subsequent to that initial interview with bank officials, the Defendant and his counsel met with Elizabeth Popovich, the senior claims attorney with Progressive Insurance, on August 4, 2006, at which time the Defendant provided a full recorded statement to the insurer of Bank RI.

As the government has noted in its papers, the Defendant has since met with federal officials on more than one occasion and has testified before a federal Grand Jury in the investigations

of Cory Johnson and David Whitaker, the architects of the fraudulent scheme, both of whom have pled guilty in federal court.

The Court has the benefit of the Motion for a Downward Departure pursuant to U.S.S.G. § 5K1.1 that has been filed by the government. In that Motion the government correctly points out that both prior to and after the entry of his guilty plea in this indictment, the Defendant has provided substantial assistance to the government. Furthermore, the government states that throughout numerous interviews Mr. Carpenter's statements were "truthful, credible and complete". And when placed under oath before a Grand Jury, Mr. Carpenter "provided direct and truthful testimony concerning his role in creating the letters of credit as well as Whitaker's complicity in the scheme."

**2. WHILE THE DEFENDANT ACCEPTS RESPONSIBILITY FOR HIS ACTIONS, HE TOO FELL PREY TO THE SCHEMES ORCHESTRATED BY CORY JOHNSON AND DAVID WHITAKER, AND DID NOT BENEFIT IN ANY WAY FROM HIS ROLE IN THEIR SCHEME**

It is not disputed that the Defendant participated in the scheme orchestrated by Cory Johnson and David Whitaker and in doing so abused his position of trust that he held with Bank RI. However, it is equally true that the Defendant stayed with Johnson and Whitaker's company, Mixitforme, for less than one day. The Defendant immediately realized that a fraud had occurred and was occurring, and he abruptly left the company and never received a dime from Mixitforme. While the Defendant was motivated in part and persuaded by the prospect of a good-paying position with Mixitforme, the first day on the job revealed to the Defendant that this was a 'con', and he abandoned the job immediately. As the Defendant states in his letter to the Court: "I have always taken pride in my decision-making process; in this case I made a mistake by believing in people that I never should

have trusted in the first place, and as a result my usual decision-making process broke down and I take responsibility for that and the harm that was caused."

Unlike many other cases that come before the Court in the area of fraud, there has been no monetary benefit to the Defendant; he lost his good job with Bank RI, a job that he had worked hard at, and his reputation and that of his family have been damaged in the community; he has pled guilty to a federal crime, a status that will be with him for the rest of his life no matter where he goes and what he does; and he faces the possibility of being incarcerated and separated from his wife and two young children for a period of time.

**3. THE DEFENDANT'S LIFE UNTIL THIS POINT HAS BEEN THAT OF A LAW-ABIDING AND PRODUCTIVE CITIZEN, ONE OF STRONG VALUES AND ACHIEVEMENTS**

Mr. Carpenter comes from a strong family with strong values. His father is a military veteran, having served in the US Army for more than 44 years, from Vietnam through Iraq. His mother raised a family of a family of 5 boys and one girl before returning to the workforce as an office manager for a physician. The Defendant graduated from Bishop Hendricken and then attended Rhode Island College and Providence College. He has been married since 1996 and has two young sons, ages 5 and 2. He has always been gainfully employed and was the branch manager of the Park Avenue Bank RI from 2003-2005.

There is no question that with his intelligence and good value system the Defendant can and will be a productive member of the community once again and will lead a law-abiding and contributing professional life. As the Defendant states: "...I will use my actions in October of 2005 as a constant

reminder of what never to do in life, to never compromise my principles and the core beliefs of my family, love, honor, trust and respect. I assure you no one is more disappointed than I."

**4. UNDER THE CRITERIA OF THE STATUTE A SENTENCE OF PROBATION AND HOME CONFINEMENT WILL SATISFY THE ENDS OF JUSTICE**

Under 18 USC § 3553 the Court has the obligation to sentence an individual to an appropriate sentence based on the nature and circumstances of the offense and the history and characteristics of the defendant, and in doing so it is the objective of any sentence to protect the public, provide an appropriate punishment for the crime that was committed, and to deter this Defendant and others of like mind from breaking the law in this manner.

Defendant respectfully submits that all of the objectives can be accomplished without a sentence of incarceration. While the offense was serious in monetary terms, it was not a crime of violence or a crime in which any injury was suffered. While there are financial institutions who have weighed in as to their financial losses, there is no personal victim who was physically hurt as a result of his crime.

And while there was an abuse of his position and an abuse of the trust that Bank RI had placed in Mr. Carpenter, this was completely isolated behavior on his part. There was no premeditation or planning on his part, or a long term scheme that he was plotting, just waiting for an opportunity to present itself. By all indications Mr. Carpenter was a fine employee for many years and there is nothing in Mr. Carpenter's history with the bank that could have predicted this kind of behavior—it was therefore a complete aberration in terms of his professional career.

There is no doubt that there needs to be punishment and a message of deterrence; the question is whether a period of probation and a period of home confinement will satisfy the ends of justice for

someone like Mr. Carpenter. The government has recommended a downward departure of 3 levels based on Mr. Carpenter's assistance in investigating and prosecuting the "big fish" in this crime. That would place this Defendant at Level 12 and Zone C, or a guideline range of 10-16 months.

That is a meaningful downward departure request, but this Defendant has worked very hard to rehabilitate himself since November 2005. He has been gainfully employed and he has kept his family together through a very trying and difficult period in their lives; his wife and children are there for him and he is there for them.

For this Defendant, with a stable work life and a strong family life, incarceration of any kind would have the effect of destroying all that Mr. Carpenter has worked to achieve since this crime took place almost 3 years ago. He has acknowledged his wrongdoing and from the outset has taken significant and important steps back on the road to leading a life that can be respected by society.

**5. CONCLUSION**

The Defendant respectfully requests a variance from the guideline range, and requests that the Court impose a period of Probation with a condition that the Defendant be sentenced to Home Confinement during part of the period of Probation. The Defendant submits that when all of the circumstances of this case are taken into consideration—his role in the offense, his lack of any gain whatsoever, his life of accomplishment but for this isolated blemish, his acknowledgement of responsibility, his strong family support and value system—a sentence of incarceration is more than necessary to meet the ends of justice in this matter.

Respectfully submitted,

DAVID CARPENTER

By His Attorney,

/s/ Jeffrey B. Pine #2278
321 South Main St.
Providence, Rhode Island 02903
401-351-8200

**CERTIFICATION**

I hereby certify that this Motion and Memo were filed electronically on the 28th day of July 2008, and a copy was mailed to Lee Vilker, Esq., AUSA, 50 Kennedy Plaza, Providence, Rhode Island 02903.

/s/ Jeffrey B. Pine